**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Chief Judge Marcia S. Krieger**

Civil Action No. 17-cv-01829-MSK-STV

**JAMES EDWARD DOUGHERTY,**

> **Plaintiff,**

**v.**

**HUNTER & ASSOCIATES, PA,**

> **Defendant.[1]**

---

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**THIS MATTER** comes before the Court pursuant to Defendant Hunter & Associates, PA's ("Hunter") Motion for Summary Judgment (**# 147**), Mr. Dougherty's response (**# 156**), and Hunter's reply (**# 161**). Also pending are Mr. Dougherty's own Motion for Summary Judgment (**# 149**), as well as certain additional motions by Mr. Dougherty (**# 150, 151**) whose resolution is unnecessary in light of the following.

### FACTS

The pertinent facts necessary for resolution of this matter are not particularly in dispute. In or about 2010, Mr. Dougherty was involved in a divorce proceeding in the state court of Florida. On August 26, 2010, in response to allegations by Mr. Dougherty's wife that he had engaged in "diversion of funds from the parties' businesses," the Florida court appointed Hunter

---

[1]     In the interests of clarity, the Court *sua sponte* modifies the caption of this case to omit the names of previously-dismissed Defendants.

as a Receiver to manage RMC Development, Inc. and Jay & Jay Properties, Inc., two rental businesses owned by the Doughertys.  Hunter operated in the capacity of Receiver until September 2011, at which time it moved for leave to submit a final report, collect certain fees, and discharge the receivership.  After notifying the parties of Hunter's request and allowing time to object, the Florida court approved that request and discharged Hunter as Receiver on November 14, 2011.

Mr. Dougherty commenced this action *pro se*[2] on July 27, 2017.  The scope of the litigation has been sprawling at times, and Mr. Dougherty's allegations and arguments are not always clear.  Mr. Dougherty's claims against Hunter in his initial Complaint (**# 1**) were quite vague, indicating that Mr. Dougherty believed "his civil rights [were] violated" by Hunter, but the details of that violation were deferred to a "future supplemental [brief] to be prepared" and filed by Mr. Dougherty.  In a "Supplemental Replacement Complaint" (**# 18**) filed on October 6, 2017, Mr. Dougherty appeared to allege that the had suffered "loss of income, loss of equity in established business, loss of established business growth, loss of rents, loss of accounts receivable, and personal injury," apparently from Hunter's conduct during the receivership, although this iteration of the Complaint also failed to provide any meaningful elaboration.

The  first clear identification of Mr. Dougherty's claims against Hunter is in in Mr. Dougherty's August 2018 Motion for Default Judgment (**# 63**) against Hunter.[3]  In that motion, Mr. Dougherty alleges that "During the receivership, vacancy substantially increased due to

---

[2]     Due to Mr. Dougherty's *pro se* status, the Court has construed all of his filings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[3]     The Court subsequently denied (**# 90**) Mr. Dougherty's requests for a default judgment and granted Hunter's motion to set aside the entry of default (**# 76**) against it, resuming the litigation between Mr. Dougherty and Hunter.

negligent management.  Security deposit monies were taken by [Hunter] as management fees and mortgages fell about 6 months behind. . . [Mr. Dougherty's] distressed real estate company has not yet been made whole."  That motion also refers to "14 very badly damaged 2 bedroom properties," suggesting that Mr. Dougherty alleged that Hunter failed to properly attend to the upkeep of the properties.  During Mr. Dougherty's deposition in this case, he testified that he intended to assert claims – presumably pursuant to 42 U.S.C. § 1983 – that Hunter violated his rights secured by the Fourth Amendment to the U.S. Constitution by "having put sensitive [commercial] information" about Mr. Dougherty's real estate businesses "in the public eye" by filing monthly receivership reports in the Florida court's docket.  Then in Mr. Dougherty's summary judgment motion (**# 149**), he alleges that Hunter: (i) failed to obtain a real estate license to operate his properties in Colorado in violation of Colorado state law; and (ii) failed to open a trust account for security deposits as required by Colorado real estate regulations and failed to account for roughly $17,000 in security deposits it collected.

Hunter now moves (**# 147**) for summary judgment on all of Mr. Dougherty's claims against it, arguing, among other things, that: (i) this Court lacks subject-matter jurisdiction over Hunter for actions taken in the course of the Receivership, as the court establishing and supervising the Receivership must first authorize hear such claims, *citing Satterfield v. Malloy,* 700 F.3d 1231, 1234 (10th Cir. 2012), and the Florida court has not; and (ii) to the extent that a claim was properly brought in this court and governed by Colorado law, Hunter, acting as a court-appointed and court-supervised Receiver, would enjoy absolute judicial immunity for any

actions taken pursuant to the Receivership, *citing Valdez v. City and County of Denver*, 878 F.2d 1285 (10th Cir. 1989), among others.[4]

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the

---

[4]     To the extent Florida law applies, the same result would occur.  *See State Farm Mut. Auto Ins. Co. v. Duval Imaging, Inc.*, 411 Fed.Appx. 268, 269-70 (11th Cir. 2011).

responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## B. Subject-matter jurisdiction

In *Barton v. Barbour*, 104 U.S. 126 (1881), Barbour had been appointed as a Receiver by a state court in Virginia to operate a railroad. Barton, a passenger on that railroad, claimed to have been injured as a result of the negligent maintenance of a piece of track and brought suit in the District of Columbia against Barbour in his capacity as Receiver. Barbour moved to dismiss for lack of jurisdiction, arguing that Barton "had not obtained leave of [the Virginia state] court to bring and maintain said suit." In affirming the dismissal of Barton's case, the U.S. Supreme Court announced "a general rule that before suit is brought against a receiver[,] leave of the court by which he was appointed must be obtained." 104 U.S. at 128. The Court explained that by obtaining a money judgment against the Receiver, a plaintiff could levy against the assets held pursuant to the Receivership and "the court which appointed the receiver and was administering

5

the trust assets would be impotent to restrain him."

In *Teton Millwork Sales v. Schlossberg*, 311 Fed.Appx. 145 (10th Cir. 2009), the court applied the *Barton* rule in a situation somewhat more factually-analogous to Mr. Dougherty's case. There, an individual named Palencar was involved in divorce proceedings with his wife, and the West Virginia state court appointed Schlossberg as a Receiver to collect and manage Palencar's assets in order to ensure they remained available for distribution. Noting that Palencar was a 25% owner of Teton Millwork, a business in Wyoming, Schlossberg purported to seize the entirety of Teton, not merely that portion reflecting Palencar's ownership. Teton sued in Wyoming state court, accusing Schlossberg of abuse of process, fraud, and various other torts. Invoking the *Barton* rule, Schlossberg moved to dismiss the claims against him, arguing that Teton had to first obtain leave from the West Virginia court that appointed Schlossberg as Receiver of Palencar's assets. The trial court agreed that *Barton* applied and dismissed the action, but on appeal, the 10th Circuit reversed. The 10th Circuit agreed with the continuing validity of the *Barton* rule, but found that the case presented an exception specifically contemplated in *Barton*, allowing third-parties whose assets are allegedly improperly seized by a Receiver to bring suit without first obtaining leave from the appointing court. 311 Fed.Appx. at 148. Because Schlossberg had seized more than just Palencar's assets, the 10th Circuit found that the exception to the *Barton* rule applied.

A few years later, in *Satterfield*, the 10th Circuit again applied the *Barton* reasoning, this time dismissing a claim for lack of jurisdiction. In *Satterfield*, a bankruptcy debtor, sought to sue Malloy, the trustee appointed to oversee Satterfield's bankruptcy estate, with Satterfield alleging that Malloy had mismanaged the estate, failed to adequately ensure the upkeep of estate property, and failed to properly report rents, among other things. Noting that Satterfield had not obtained

the Bankruptcy Court's leave to bring the claims, Malloy moved to dismiss citing the *Barton* doctrine.  The trial court dismissed the claims and the 10th Circuit affirmed.  The 10th Circuit: (i) reaffirmed that the defect in failing to obtain leave from the appointing court before suing a Receiver was jurisdictional in nature; (ii) found that a bankruptcy trustee occupies a position similar to that of a Receiver in equity; (iii) explained that the exception recognized in *Teton* did not apply because, unlike in that case, Satterfield was not a third-party to the proceeding (there, as here, a divorce action) that resulted in the appointment of the Receiver; (iv) held that simply labeling the claims as torts brought against the Receiver in his or her personal capacity, rather than in the official capacity as Receiver, did not operate to evade the *Barton* rule, and that the Court must examine the claims to determine whether they are directed at the Receiver's appointed duties; and (v) found that the fact that the underlying proceeding (there, Satterfield's bankruptcy case) had already concluded did not alter the applicability of the *Barton* rule.[5] Because "each of [Malloy's] alleged actions was related to his trusteeship duties,  . . . Satterfield was required to obtain leave of the bankruptcy court before filing suit in the district court." Having failed to do so, the District Court was without jurisdiction to hear Satterfield's claims.

---

[5]        Quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998), the 10th Circuit agreed that:

> Without the requirement [of obtaining leave from the appointing court], trusteeship will become a more irksome duty, and so it will be harder for courts to find competent people to appoint as trustees. Trustees will have to pay higher malpractice premiums, and this will make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). Furthermore, requiring that leave to sue be sought enables bankruptcy judges to monitor the work of the trustees more effectively. It does this by compelling suits growing out of that work to be as it were prefiled before the bankruptcy judge that made the appointment; this helps the judge decide whether to approve this trustee in a subsequent case.

The *Barton* rule is applicable here. Both *Teton Millwork* and *Satterfield* reflect that the general rule of *Barton* – that a court lacks subject-matter jurisdiction over claims against a Receiver unless and until the plaintiff obtains leave from the court that appointed that Receiver to bring such claims – remains valid. As in *Satterfield*, Mr. Dougherty was a party to the underlying lawsuit that resulted in Hunter's appointment as Receiver, and thus, this case does not fall within the "third-party" exception recognized in *Teton Millwork*. Mr. Dougherty's claims against Hunter clearly relate to alleged mismanagement of the businesses during the course of the Receivership. As such, the policy considerations underlying the *Barton* rule required Mr. Dougherty to seek leave from the Florida court before pursuing his claims against Hunter here. Because Mr. Dougherty did not do so, the Court dismisses Mr. Dougherty's claims against Hunter for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).[6]

## C. Absolute immunity

In *T & W Investment Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir. 1978), the plaintiff sought to sue a court-appointed Receiver, alleging that the Receiver improperly sold property belonging to the plaintiff and improperly refused to authorize certain payments to the plaintiff by a related entity. The Receiver moved to dismiss the claims against it on the grounds of absolute immunity, and the trial court granted that motion. On appeal, the 10th Circuit affirmed, recognizing that "judges and court officials are immune from suit under s 1983 for acts performed in their official capacities, even if they are accused of acting maliciously and

---

[6]     Mr. Dougherty argues that C.R.S. § 38-12-103(4)(a) statutorily authorizes suits against Receivers without requiring leave of the appointing court. That statute requires a person in possession of rental property to transfer possession of tenant security deposits to that person's successor in interest. Nothing in the statute is susceptible to a reading that purports to waive the rule in *Barton*.

corruptly." The court went on to hold that "a receiver is a court officer who shares the judge's immunity, at least if he is carrying out the orders of his appointing judge." Just as courts considering the policy justifications behind the *Barton* rule focus on the potential harm and harassment that Receivers would face, the 10th Circuit in *T & W* explained why it was necessary to cloak Receivers in absolute judicial immunity:

> a receiver who faithfully and carefully carries out the orders of his appointing judge must share the judge's absolute immunity. To deny him this immunity would seriously encroach on the judicial immunity already recognized by the Supreme Court. It would make the receiver a lightning rod for harassing litigation aimed at judicial orders. In addition to the unfairness of sparing the judge who gives an order while punishing the receiver who obeys it, a fear of bringing down litigation on the receiver might color a court's judgment in some cases; and if the court ignores the danger of harassing suits, tensions between receiver and judge seem inevitable.

588 F.2d at 802. The rule announced in *T &W* has been reaffirmed by the 10th Circuit on several occasions since. *See Swain v. Seaman*, 505 Fed.Appx. 773, 775 (10th Cir. 2012); *Valdez*, 878 F.2d at 1288.

Here, there is no dispute that Hunter was appointed by the Florida court to serve as a Receiver, ordered to "take possession of the business enterprises known as RMC Development, Inc. and Jay & Jay Properties, Inc.," to "manage the properties [and] collect the income," to "do all the things . . . ordinarily done or incurred by owners, managers, and operators of businesses" (except make capital improvements), and to file regular reports with the court showing ongoing receipts and expenditures for the businesses. Although Mr. Dougherty may disagree as to whether Hunter discharged those duties <u>effectively</u>, there can be no doubt that the acts that underlie Mr. Dougherty's iteration of his claims – that Hunter failed to account for tenant security deposits, failed to adequately maintain the property, or published confidential

information in its court-mandated reports – were acts that were within the scope of the duties Hunter was ordered by the court to perform.  Put differently, Mr. Dougherty's claims accuse Hunter of performing its court-ordered duties poorly, not of taking actions beyond those authorized by the court.  As such, under cases like *T & W*, Hunter enjoys absolute immunity for its actions, barring Mr. Dougherty's claims.  To the extent Mr. Dougherty objected to Hunter's management of the businesses, his remedy was to seek relief through the Florida court that appointed Hunter, not collaterally in this court many years after the fact.  Accordingly, Mr. Dougherty's claims against Hunter are dismissed on absolute immunity grounds as well.

Because the Court lacks subject-matter jurisdiction over Mr. Dougherty's claims against Hunter pursuant to *Barton* and with regard to any a claim properly brought here under Colorado law Hunter enjoys absolute immunity from Mr. Dougherty's claims, the Court need not reach the remaining issues raised in Hunter's motion.  For the same reasons, the Court need not reach Mr. Dougherty's own summary judgment motion, nor any of the remaining pending motions in this matter.

## **CONCLUSION**

For the foregoing reasons, Hunter's Motion for Summary Judgment **(# 147)** is **GRANTED**, and Mr. Dougherty's claims against Hunter are **DISMISSED**.  Mr. Dougherty's motions **(# 149, 150, 151)** are **DENIED AS MOOT**.  The claims against all other Defendants in

this action having been previously resolved (**# 47, 90, 124**), there remain no further matters for adjudication and the Clerk of the Court shall close this case.

Dated this 19th day of March, 2021.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge